```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


     UNITED STATES OF AMERICA    :
                                 :
          v.                     : Crim. No. 3:18-cr-00163 (AWT)
                                 :
     ADAM STRONG                 :
```

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

For the reasons set forth below, the defendant's motion for compassionate release under the First Step Act (ECF No. 108) is hereby DENIED.

In 2015 Adam Strong pled guilty to one count of conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine and 28 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.  See Case No. 3:15cr93(AWT).  The defendant's sentencing was continued to allow him to participate in a treatment program at the Salvation Army Residential Treatment Facility.  He successfully completed the Salvation Army program.  As a result, on May 16, 2016, the court sentenced Strong to time served, which amounted to approximately 5.5 months, to be followed by a 5-year term of supervised release.  The advisory range under the Sentencing Guidelines was 130 to 162 months of imprisonment, so the sentence imposed constituted a departure well below the advisory Guidelines range.

Less than a year later, i.e. by March 2017, the defendant had returned to selling drugs. On August 3, 2018, the defendant pled guilty to a one-count information which charged that "from in or about March 2017, through in or about May 2018" the defendant conspired to distribute, and to possess with intent to distribute, a substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846.  Information (ECF No. 24) at 1.  At his bond hearing on August 3, 2018, the defendant was ordered released to Connecticut Valley Hospital for residential treatment.  He completed that program on October 5, 2018 and thereafter was held in custody at Wyatt Detention Facility.

On March 9, 2020, the court sentenced Mr. Strong to 132 months of imprisonment for his 2018 offense, with credit for time served, to be followed by a six-year term of supervised release, and also sentenced him to serve a consecutive sentence of 36 months of imprisonment for his violation of supervised release in Case No. 3:15cr93.  The 132-month sentence imposed was a variance below the advisory range under the Sentencing Guidelines.  Based on Criminal History Category VI and a Total Offense Level of 31, that advisory range was 188 to 235 months. The court's explanation for the sentence imposed included the following:

> When I look at all the facts and circumstances

>surrounding the offense conduct here and I look at your criminal history -- not just the 2015 case, but also the history prior to that time -- I am most aware of the need to fashion a sentence that constitutes just punishment and the need to deter you from committing further offenses.
>
>The defense requests a number of variances, one based on a one-to-one ratio for crack cocaine and powder. I conclude that such a departure is not appropriate in this case. When Mr. Strong was here last time he had significant quantities of both powder and crack cocaine. He was fully aware of the difference between distributing one versus the other and made a choice to distribute crack cocaine.
>
>In terms of the qualifying offense for -- well, in terms of the career offender status, let me say this: The career offender status is earned. I do conclude, however, that because this is a (b)(1)(C) offense and the quantity involved here is atypical of what I usually see for people who are being sentenced as career offenders, that I will use the total offense level of 25, Criminal History Category VI, and I'll vary to that.
>
>With respect to the arguments and the information that's been submitted to me with respect to Mr. Strong's addiction and his discovery of the mental health problems he has when he went to CVH, I really had to go back and think about that. I thought about it very seriously. I came to the conclusion that Mr. Strong is a persistent drug dealer who also uses drugs. In other words, that he's not a person, who we sometimes see, who deals drugs because he is looking to feed his addiction. I know all the evidence doesn't point in one direction there, but that's the conclusion that I've come to. I do not see his drug dealing as having been caused by his addiction. I come to this conclusion based on his long history of drug dealing and the quantities he's been involved with over time and what happened after his 2016 sentencing.
>
>. . .
>
>When I look at a total offense level of 25 and Criminal History Category VI, the range is greater than 24 months in terms of the top to the bottom. I conclude that because Mr. Strong was given a ten-year sentence, as reflected in Paragraph 26 of the Presentence Report, that the sentence in this case should be greater than that sentence, and it will be. So this will constitute a variance and a non-Guideline sentence.

Tr. (ECF. No. 105) at 24, l. 22 to 27, ll. 2-9.

The defendant moves the court "to reduce his sentence to time served and release him to home confinement, in light of (a) the growing COVID-19 pandemic, which is especially dangerous in the confines of correctional institutions, (b) Mr. Strong's documented medical conditions, including obesity and psoriasis[], which place him among those at highest risk of death or severe illness if exposed to COVID-19, and (c) the § 3553(a) factors as applied in his particular case." Motion at 1.

Section 3582(c)(1)(A) requires that

> the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . .

18 U.S.C. § 3582(c)(1)(A).  A court may reduce a term of imprisonment under Section 3582(c)(1)(A)(i) if, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, the court finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission".  18 U.S.C. § 3582(c)(1)(A)(i).  The policy statement applicable to compassionate release is U.S.S.G. § 1B1.13.

The defendant argues that he is especially vulnerable should he contract COVID-19 because his "morbid obesity, hypertension, and asthma place him at extremely high risk for severe illness or death

4

should he contract COVID-19". Motion at 21. He also references a history of psoriasis and sleep apnea.

Sleep apnea is not mentioned in the defendant's medical records or in the Presentence Report, so the defendant has not provided sufficient documentation with respect to any such condition. Moreover, "sleep apnea is not a risk factor identified by the CDC[.]" United States v. Riter, No. 18cr313(JFK), 2020 WL 3428144, at *3 (S.D.N.Y. June 23, 2020). In addition, as explained by the government in its opposition, the CDC has not identified psoriasis as a risk factor for COVID-19. See Gov't's Response (ECF No. 113) at 10.

While individuals with high blood pressure might be at an increased risk of severe illness from COVID-19, the defendant's hypertension appears to be well-controlled. It does not appear that he needed any treatment for his blood pressure prior to April 23, 2020. The defendant's asthma condition also appears to be well-controlled. His medical records at the time of intake on October 5, 2018 list asthma among his medical conditions, and it appears he did not request an asthma pump until April 23, 2020. The CDC's guidance states that individuals with moderate to severe asthma might be at an increased risk for severe illness from COVID-19, but the defendant's medical records indicate that, prior to April 23, 2020, there was no treatment required to manage his

5

asthma and those records provide no other indication that his condition is unmanageable.

That leaves the fact that the defendant suffers from obesity. The defendant's obesity does place him at high risk for serious complications should he contract COVID-19, and that appears to be an extraordinary reason, but when considered in light of the applicable § 3553(a) factors, the defendant's obesity is not an extraordinary <u>and</u> compelling reason warranting a sentence reduction.

In March 2020, the defendant was sentenced both for violation of the conditions of the term of supervised release imposed following his May 2016 drug conviction and for the new drug offense committed while he was on supervised release.  At sentencing the court concluded that the defendant is a persistent drug dealer who has a long history of drug dealing.  The court concluded that it was important in the defendant's case to fashion a sentence that constitutes just punishment and deters the defendant from committing further offenses.  The court also concluded that the defendant's career offender status has been earned.  Nevertheless, because § 841(b)(1)(c) applied to the defendant's offense of conviction, the court imposed a sentence that constituted a downward variance from the advisory range under the Sentencing Guidelines.  But, knowing that the sentence on the supervised release violation would be imposed consecutively, the court noted

that a sentence greater than ten years was necessary to serve the purposes of sentencing that are most important in the defendant's case.

The defendant also argues, in substance, that Bureau of Prisons facilities cannot protect inmates from exposure to COVID-19.  See Motion at 18, 19 ("Jails and prisons are among the most dangerous places to be during an epidemic because they create the ideal environment for transmission . . . . COVID-19 cases have already been confirmed at multiple BOP facilities, and with every day that passes, BOP identifies additional cases at additional institutions.")  However, potential COVID-19 exposure is not, standing alone, an extraordinary and compelling reason to grant release.  See United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

The defendant has served only a little more than two years of the total effective sentence of 168 months (i.e., 36 months consecutive to the 132 months) that was imposed earlier this year. Given this particular defendant's course of conduct while on supervised release and this defendant's character, as discussed at sentencing, the court concludes that reducing his sentence to time served would seriously undermine the purposes of a criminal

7

sentence the court concluded are most important in this case. Thus after considering the applicable § 3553(a) factors, the court concludes that the defendant has failed to present extraordinary and compelling reasons for reduction of his sentence.

    It is so ordered.

    Signed this 7th day of December 2020 at Hartford, Connecticut.

                                              /s/AWT  
                                          Alvin W. Thompson  
                              United States District Judge